## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| EFL GLOBAL, LLC, | : | |
| | : | **Case No. 2:24-cv-2454** |
| **Plaintiff,** | : | |
| | : | **Judge Algenon L. Marbley** |
| **v.** | : | **Magistrate Judge Elizabeth P. Deavers** |
| | : | |
| ANYTA MCVEIGH COX, et al. | : | |
| | : | |
| **Defendant.** | : | |

### OPINION & ORDER

This matter comes before the Court on Plaintiff's Motion for Judgment on the Pleadings and Default Judgment. (ECF No 22). For the following reasons, this Court **GRANTS in part and DENIES in part** Plaintiff's Motion.

### I.     BACKGROUND

Plaintiff EFL Global, LLC brings this case against Defendants former employee Anyta McVeigh Cox and her husband, Douglas Cox, asserting claims of fraud, conversion, theft, breach of the faithless servant doctrine, unjust enrichment, and civil conspiracy. (ECF No. 1). These claims arise from a fraudulent scheme allegedly orchestrated by the Defendants during Anyta's tenure with Plaintiff, resulting in financial losses exceeding $200,000. (ECF No. 1 ¶ 1).

Anyta began her employment with Plaintiff in June 2017 and served as the Senior Container Freight Station ("CFS") Manager at the company's Columbus, Ohio facility. (*Id*. ¶¶ 8, 10). In that role, she bore supervisory responsibility over the facility's freight receiving, warehousing, and distribution operations. (*Id*. ¶ 10). Notably, she was regarded as a "model employee" and was recognized for her exemplary performance at Plaintiff's international gathering in Japan. (*Id*. ¶ 12).

One aspect of Anyta's duties involved ensuring the Columbus CFS was adequately staffed, which often entailed engaging temporary labor through third-party staffing agencies. (*Id*. ¶ 14). Douglas Cox, now her husband, was one such temporary worker and performed legitimate work for nearly a year leading up to November 2022. (*Id*. ¶ 16).

Around October 2022, Anyta was tasked with preparing weekly Excel spreadsheets documenting the hours worked by temporary employees, which she would then submit to the staffing agency. (*Id*. ¶ 19). In May 2023, however, she inadvertently copied another Plaintiff employee on an email to the agency, revealing that both her husband and college-aged daughter were listed as having reported work hours. (*Id*. ¶ 20). This raised immediate concerns, as her daughter had never worked at the CFS, and Douglas had not worked there since late 2022. (*Id*.). This disclosure prompted an internal investigation, during which Plaintiff discovered that Anyta had been submitting false time entries for both Douglas and her daughter, including overtime, for work that was never performed. (*Id*. ¶ 21). These fraudulent entries spanned approximately ten months for her daughter and seven months for Douglas after his departure from the CFS—some of which corresponded to periods when neither individual was in Columbus. (*Id*. ¶ 23). The resulting fraudulent payments exceeded $209,000. (*Id*. ¶ 24).

Anyta confessed that most of these payments were deposited into her bank account, although initial payments may have also been routed through accounts belonging to Douglas and her daughter. (*Id*. ¶ 25). Plaintiff contends that Douglas, given his familiarity with the temporary staffing process, knowingly received payment for work he did not perform and willingly participated in the scheme. (*Id*. ¶ 26). Further, Plaintiff's investigation revealed that Anyta inflated the reported hours for several other temporary workers at the CFS between July 2022 and May 2023, resulting in overpayment for unworked hours. (*Id*. ¶ 27).

On or about June 7, 2023, Plaintiff's management traveled to Columbus to confront Anyta regarding the findings of their investigation. (*Id*. ¶ 28). She did not deny the misconduct, and her employment was terminated that same day. (*Id*. ¶ 29).

Subsequently, Plaintiff presented Anyta with a Restitution Agreement, which she executed on June 23, 2023. (*Id*. ¶ 30). In it, she admitted to unlawfully stealing $199,038.32 from Plaintiff by knowingly submitting false time records for her husband and daughter between July 2022 and May 2023. (*Id*. ¶ 31). She agreed to repay the full amount, along with an additional $10,000 in legal fees, by August 11, 2023, and released any claims she might have had against Plaintiff. (*Id*. ¶¶ 32 –33). She failed to make the agreed restitution payment. (*Id*. ¶ 34). When Plaintiff inquired about the payment, Anyta responded that she lacked the funds, expressed remorse, and acknowledged the depth of disappointment her actions had caused, stating she was "so so sorry," "disgusted with [her]self," and unable to "fathom the level of disappointment" Plaintiff must feel. (*Id*. ¶¶ 35–36). Despite her professed inability to repay the stolen funds, Plaintiff asserts that Anyta has taken multiple vacations since August 11, 2023. (*Id*. ¶ 37).

On May 15, 2024, Plaintiff filed the Complaint alleging fraud, conversion, civil theft, and faithless servant against Anyta, as well as unjust enrichment and civil conspiracy against both Defendants. On June 26, 2024, Anyta filed an affidavit admitting that she started working for Plaintiff in June 2017, completed time records for temporary employees and added Douglas and her daughter to time records. (ECF No. 6 ¶¶ 1–3). Nonetheless, she asserts that, "this was not a duplicitous scheme planned for years." (*Id*. ¶ 5). She also requested a meeting with Plaintiff's attorney to arrange payment. (*Id*. ¶ 7). Mediation was scheduled and on November 20, 2024, the mediation report was filed reflecting that the case was at an impasse. (ECF No. 18).

3

On January 10, 2025, default was entered as to Douglas, and on January 17, 2025, Plaintiff filed a Motion for Default Judgment against Douglas and a Motion for Judgment on the Pleadings against Anyta. (ECF No. 22). Defendants failed to respond.

## II.    LAW & ANALYSIS

### A.  Motion for Judgment on the Pleadings Against Anyta

Plaintiff's Motion for Judgment on the Pleadings is unopposed. Even so, "the movant must always bear this initial burden regardless if an adverse party fails to respond." *Carver v. Bunch,* 946 F.2d 451, 455 (6th Cir.1991). Accordingly, this Court must determine whether Plaintiff is entitled to judgment on the pleadings before this Court grants the relief requested.

A party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. FED. R. CIV. P. 12(c). "'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 479 F.2d 478, 480 (6th Cir.1973)). This Court, however, "'need not accept as true legal conclusions or unwarranted factual inferences.'" *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006)). The motion is granted if "no material issue of fact exists" and the moving party "is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A.*, 510 F.3d at 581 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir.1991)).

In considering motions filed pursuant to Rule 12(c), the Sixth Circuit has determined that, "[w]hen the plaintiff, as opposed to the defendant, moves for judgment on the pleadings . . . [the court] ask[s] whether the plaintiff's petition, stripped of those allegations which are denied by the

defendant's answer, would leave the petition stating a cause of action against the defendant." *United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022), *reh'g denied*, No. 22-5085, 2022 WL 18431457 (6th Cir. Dec. 19, 2022), and *cert. denied sub nom. Kroger Ltd. P'ship I v. United Food & Com. Workers, Loc.* 1995, 143 S. Ct. 2496, 216 L. Ed. 2d 455 (2023) (internal citations omitted). The Court may consider "exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016), *aff'd*, 714 F. App'x 565 (6th Cir. 2017) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008)).

Plaintiff seeks judgment on all counts in the Complaint. The Court addresses each claim in turn.

### 1. Civil Theft (Count Three)

Plaintiff asserts a claim for civil theft against Anyta pursuant to R.C. §§ 2307.60 and 2307.61. (ECF No. 1 ¶¶ 48–50). Plaintiff alleges that Anyta knowingly misappropriated funds, entitling Plaintiff to recover treble damages equal to three times the value of the loss. (*Id*. ¶ 50).

Under § 2307.60(A), "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law." *See Jacobson v. Kaforey*, 75 N.E.3d 203, 205–06 (Ohio 2016) (quoting § 2307.61(A)). In turn, § 2307.61(A) authorizes the recovery of damages from any person "who commits a theft offense," and provides that a plaintiff may elect to recover:

> Three times the value of the property at the time it was willfully damaged or was the subject of a theft offense, irrespective of whether the property is recovered by way of replevin or otherwise, is destroyed or otherwise damaged, is modified or otherwise altered, or is resalable at its full market price. This division does not apply to a check, negotiable order of withdrawal, share draft, or other negotiable instrument that was returned or dishonored for insufficient funds by a financial institution if the check, negotiable order of withdrawal, share draft, or other

5

negotiable instrument was presented by an individual borrower to a licensee under sections 1321.35 to 1321.48 of the Revised Code for a loan transaction.

R.C. § 2307.61(A)(1)(b)(ii).

Plaintiff's Complaint contains unopposed allegations which, when accepted as true, establish that Plaintiff was injured as a result of Anyta's commission of a theft offense. A theft offense includes a violation of R.C. § 2913.02 which prohibits any person, with the purpose to deprive the owner of property or services, from knowingly obtaining or exerting control over such property or services either without the owner's consent, R.C. § 2913.02(A)(1), or by means of deception, R.C. § 2913.02(A)(3). Notably, in a civil action to recover damages for a theft offense, the trier of fact may determine that a theft offense has been committed regardless of whether the defendant has pleaded guilty to or has been convicted of any criminal offense. § 2307.61(G)(1).

According to the Complaint, Anyta was a respected member of Plaintiff's operations team and "was in many ways a model employee." (ECF No. 1 ¶ 11). Among her responsibilities, she was tasked with preparing an Excel spreadsheet documenting the hours worked by temporary employees and submitting it to the staffing agency. Based on those spreadsheets, the agency would generate invoices, which Plaintiff would pay, enabling the agency to compensate the temporary workers. (*Id*. ¶¶ 14-19). Plaintiff alleges that Anyta manipulated this process by fraudulently reporting hours worked by Douglas and her daughter. (*Id*. ¶ 21). Relying on Anyta's falsified spreadsheets, Plaintiff paid the agency for hours never worked, resulting in in financial losses exceeding $209,000. (*Id*. ¶ 21, 24-25). Plaintiff received no services in exchange for these payments. (*Id*. ¶ 21). Accepting as true the unopposed allegations, Anyta committed a theft offense by knowingly exerting control over its property without its consent and by deception.

Not only are Plaintiff's allegations unopposed, but Anyta herself concedes that she was a model employee for six years who later altered records to reflect time worked by Douglas and her

daughter beginning in 2022. (ECF No. 8 ¶¶ 1-6). Her assertion that her conduct was "not a duplicitous scheme planned for years" (*Id.* ¶ 5) is immaterial to the question of whether her actions constituted a theft offense under Ohio law.

Accordingly, Plaintiff has alleged facts showing it was injured by a person who committed a theft offense, and it is therefore entitled to recover damages under R.C. § 2307.61(A). Here, Plaintiff seeks liquidated damages equal to $627,000. (ECF No. 22 at 5, 15). While Ohio appellate courts once held that these treble damages were within a trial court's discretion, this discretion shifted to the party seeking damages as an amendment changed the statute from "the property owner may recover" to that "the property owner may elect to recover." *Batsche v. Batsche*, 2024-Ohio-1234, ¶ 45 (12th Dist.) (collecting cases). As such, consistent with R.C. §§ 2307.60 and 2307.61, Plaintiff is entitled to three times the value of the property at issue: $627,000. *See, e.g.*, *COD Properties Ohio, LLC v. Black Tie Title, LLC*, 2025-Ohio-2519, ¶ 171 ("Therefore, interpreting R.C. 2307.61 to allow recovery of treble damages for the theft of real property aligns with the statutory framework and its remedial purpose of offering a civil means to recover damages for acts that would otherwise constitute a criminal offense.").

### 2. Fraud and Conversion (Counts One and Two)

Plaintiff also asserts claims against Anyta for fraud and conversion in Counts One and Two of the Complaint. (ECF No. 1 ¶¶ 38-47). Plaintiff has clarified that these claims are pled in the alternative. In other words, if the motion on Count Three for civil theft is granted, Plaintiff is not seeking additional monetary recovery under Counts One and Two. (ECF No. 22 at 7). Indeed, under Federal Rule of Civil Procedure 8(d), a party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or in separate ones. If a party

makes alternative statements, the pleading is sufficient if any one of them is sufficient. Fed. R. Civ. P. 8(d)(2).

Because this Court has granted Plaintiff's Motion for Judgment on the Pleadings with respect to the civil theft claim, Plaintiff's requests for judgment as to the fraud and conversion claims are thus moot.

### 3. Faithless Servant (Count Four)

In Count Four of the Complaint, Plaintiff asserts Anyta violated the faithless servant doctrine. (ECF No. 1 ¶¶ 52-54). "Under Ohio common law, 'an employee owes a duty to act in the utmost good faith and loyalty toward his employer.'" *Cheryl & Co. v. Krueger*, 536 F. Supp. 3d 182, 212 (S.D. Ohio 2021) (internal quotation marks omitted) (quoting *Orbit Elecs., Inc. v. Helm Instrument Co.*, 167 Ohio App.3d 301, 855 N.E.2d 91, 100 (2006)). Ohio courts recognize a subset of a claim of the employee's duty: the "faithless servant" doctrine. *Id.* The faithless servant doctrine provides that "dishonesty and disloyalty on the part of an employee which permeates his service to his employer will deprive him of his entire agreed compensation, due to the failure of such an employee to give the stipulated consideration for the agreed compensation." *Roberto v. Brown Cnty. Gen. Hosp.*, 571 N.E.2d 467, 469 (Ohio Ct. App. 1989).

Applying this doctrine, Ohio courts have held that "an employee cannot be compensated for his own deceit or wrongdoing," if it "permeates" the service to the employer, thus an employee's compensation should be denied for the "period of faithlessness." *Id.*; *see also Cheryl & Co.*, 536 F. Supp. 3d at 212 (S.D. Ohio 2021). For example, in *Roberto*, the court applied the faithless servant doctrine and held that "stealing or embezzling monies which are rightfully the property of one's employer constitutes a willful and deliberate breach of an employment contract,

justifying withholding of compensation during the faithless period since the compensation for that period has not been properly earned." *Roberto*, 59 Ohio App.3d 84 at 87.

Here, Plaintiff alleges that Anyta violated the faithless servant doctrine by altering records to facilitate payments for work not performed. The Complaint asserts that Anyta repeatedly defrauded and embezzled money from Plaintiff on a nearly weekly basis from at least July 2022 until May 2023. (ECF No. 1 ¶ 52-53). Moreover, Anyta herself admits that she began altering time records starting in mid-to-late 2022. (ECF No. 8 ¶ 3). Given the frequency and magnitude of these acts of dishonesty and disloyalty —totaling over $209,000 in fraudulent payments—this conduct clearly "permeated" her employment and justifies the denial of her compensation for that period under the faithless servant doctrine.

Plaintiff seeks recovery of Anyta's compensation beginning July 1, 2022. (ECF No. 22 at 15). Based on the documentation referenced in the Complaint and submitted by Plaintiff in support of its motion, however, the earliest instance of falsified reporting is tied to the accounting period beginning July 17, 2022. (ECF No. 21-1, Exs. A-B). The final accounting period extends through May 28, 2023, with a check dated June 2, 2023. (ECF No. 21-1, Exs. A-B).

While Plaintiff generally alleges that the relevant period spans from July 2022 through May 2023, this Court "will not blindly accept legal conclusions nor draw unwarranted factual inferences." *Kroger Co*., 51 F.4th at 202. Accepting July 1, 2022, as the start date for the period of faithlessness would require this Court to do precisely that.

Accordingly, Plaintiff's requested relief based on a faithless period beginning July 1, 2022 is not supported by the record. As such, Plaintiff must file a supplement to its motion either: (1) reconciling the discrepancy between its asserted "faithless period" beginning July 1, 2022, and the

evidentiary record reflecting misconduct no earlier than July 17, 2022; or (2) revising the damages calculation based on a faithless period commencing no earlier than July 17, 2022.

### 4. Unjust Enrichment (Count Five)

Plaintiff also asserts Count Five against Anyta and Douglas, alleging unjust enrichment. (ECF No. 1 ¶¶ 51-59). To recover under a theory of unjust enrichment under Ohio law, a plaintiff must establish that: (1) it conferred a benefit upon Defendants; (2) Defendants had knowledge of this benefit; and (3) it would be unjust for Defendants to retain this benefit without payment. *F.D.I.C. v. Jeff Miller Stables*, 573 F.3d 289, 294–95 (6th Cir. 2009) (quoting *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 465 N.E.2d 1298, 1302 (1984)).

Plaintiff alleges that it conferred a benefit on both Defendants by paying for work that was never performed. (ECF No. 1 ¶ 56). While Douglas has not admitted to the conduct, the allegations remain unopposed. Plaintiff further asserts that a portion of the payments were deposited into Douglas's personal account, suggesting receipt of the benefit. (*Id*. ¶ 25). As to Anyta, Plaintiff alleges that Anyta confessed to having the majority of the payments deposited directly to her bank account. (*Id*.).

With respect to Defendants' knowledge, Anyta acknowledges the misconduct and "take[s] responsibility for [her] actions." (ECF Nos. 1 ¶  25; 8 ¶¶ 3-4). Plaintiff also alleges that Douglas possessed sufficient familiarity with the staffing process to infer his awareness of the scheme. According to the Complaint, Douglas previously worked with the same staffing agency and had experience with temporary placements at Plaintiff's facility. (ECF No. 1 ¶ 26). Plaintiff claims that Douglas was aware of and assented to a scheme as he was a prior agency worker, the recipient of payments for fictitious work, and Anyta's husband.  (*Id*.).

Based on these well-pleased and unopposed allegations, retaining the funds under these circumstances would be unjust. Due to Anyta's conduct, Plaintiff conferred over $209,000 in payments for services allegedly performed by Douglas and Anyta's daughter, which were in fact never rendered. (*Id*. ¶ 24). As such, Plaintiff is entitled to judgment on the pleadings against Anyta as to the unjust enrichment claim (Count Five) for the full amount of the benefit conferred as a result of her conduct: **$209,799.42.**

As to Douglas, Plaintiff's request is made by motion for default judgment. The Court will address whether Plaintiff is entitled to judgment against Douglas upon completing its evaluation of the default judgment requirements.

### 5. *Civil Conspiracy (Count Six)*

In Count Six of the Complaint, Plaintiff alleges a claim for civil conspiracy against Anyta and Douglas. (ECF No. 1 ¶¶ 60-64). Under Ohio law, "a civil conspiracy consists of the following: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Barger v. United Bhd. of Carpenters & Joiners of America*, 3 F.4th 254, 274 (6th Cir. 2021) (quoting *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir. 2012)).

Plaintiff is not entitled to judgment on the pleadings based on this claim. (ECF No. 22 at 10). The Complaint's allegations of conspiracy are largely conclusory. Even though Defendants have not opposed these allegations, this Court may disregard "naked assertions" of fact or "formulaic recitation[s] of the elements of a cause of action." *Dawson v. Allstate Vehicle & Property Ins. Co.*, 709 F.Supp.3d 444, 448 (S.D. Ohio 2024). For example, Plaintiff asserts that "Defendant Anyta and Defendant Douglas, acting together, maliciously schemed" to defraud Plaintiff out of money (ECF Nos. 1 ¶ 61; 22 at 10), and that Defendant Douglas was "aware of and

11

assented to Defendant Anyta's scheme" (ECF Nos. 1 ¶ 26; 22 at 10). These allegations merely restate the elements of the claim without providing the factual detail necessary to support a plausible inference of a shared understanding or coordinated conduct.

Moreover, the Complaint lacks factual allegations sufficient to establish a malicious combination. The malicious combination element "does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act." *DeBoer Structures (U.S.A.) Inc. v. Shaffer Tent and Awning Co.*, 233 F. Supp. 2d 934, 945 (S.D. Ohio 2002) (internal quotations omitted). Express agreement is not necessary; rather, "it is sufficient that the parties in any manner come to a mutual understanding that they will accomplish the unlawful design." *Pumphrey v. Quillen,* 102 Ohio App. 173, 178, 141 N.E.2d 675 (1955)*.* Further, "[t]he malice involved in the tort is that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." *Evanston Ins. Co. v. Certified Steel Stud Assn., Inc*., 787 Fed.Appx. 879, 886 (6th Cir. 2019) (quoting *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859, 868 (1998)).

Here, the Complaint's limited and conclusory allegations fall short of plausibly establishing any common understanding or agreement between Anyta and Douglas to engage in unlawful conduct. The Complaint contains no specific facts describing any communication, agreement, or concerted activity between them. This is especially evident given the allegations that "the vast majority" of the payments were deposited into Anyta's bank account, and that some payments went to Anyta's college-aged daughter. (ECF No. 1 ¶¶ 20, 25). While it is alleged that Douglas received some portion of the improperly obtained funds, the Complaint states only that the payments were initially deposited into his account. (*Id*. ¶ 25). This does not support a plausible inference that Douglas and Anyta had a mutual understanding to falsify records so that he could

12

receive payment for work he did not perform, or that Anyta or her daughter could receive payment for work Anyta's daughter did not complete.

Although Douglas's relationship with Anyta—identified as her "now-husband"—may suggest the possibility of shared knowledge or communication, that designation implies that they were not married throughout the relevant period. (*Id*. ¶ 16). At most, the Complaint alleges that Douglas knowingly accepted payment for services he did not perform, but it does not support a plausible inference that he knowingly participated in, or agreed to, Anyta's conduct. Such allegations, without more, do not establish the requisite common design or intent necessary to state a claim for conspiracy.

Absent more concrete allegations suggesting a malicious combination between Defendants, the civil conspiracy claim is inadequately pled and cannot support judgment on the pleadings.

### B. Motion for Default Judgment Against Douglas

Rule 55 of the Federal Rules of Civil Procedure governs defaults and default judgments. *See* Fed. R. Civ. P. 55. The first step is entry of default. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default is entered, a party may take the second step by moving for default judgment. Fed. R. Civ. P. 55(b). At the default judgment stage, "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Arthur v. Robert James & Assocs. Asset Mgmt., Inc*., 2012 WL 1122892, at *1 (S.D. Ohio Apr. 3, 2012) (internal quotation marks omitted).

13

The entry of default does not automatically entitle the plaintiff to a default judgment. *Methe v. Amazon.com.dedc, LLC*, 2019 WL 3082329, at *1 (S.D. Ohio July 15, 2019). "The plaintiff must still show that, when all of the factual allegations in the complaint are taken as true, the defendant is liable for the claim(s) asserted." *Id.*; *see also F.C. Franchising Sys., Inc. v. Schweizer*, 2012 WL 1945068 at *3 (S.D. Ohio May 30, 2012) ("[I]t remains for the district court to consider whether the unchallenged facts constitute a cause of action, since a party in default does not admit mere conclusions of law." (citing *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010)).

The Sixth Circuit has directed courts to consider the following factors in deciding a motion for default judgment:

> (1) possible prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) possible disputed material facts; (6) whether the default was due to excusable neglect; and (7) the preference for decisions on the merits.

*Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002) (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986); *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990); and *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193–94 (6th Cir. 1986)).

### 1. Prejudice to Plaintiff

The first factor weighs in favor of granting the motion for default judgment. Plaintiff has been unable to recover any funds from Anyta despite her confession and the ample evidence establishing liability. (ECF No. 22 at 13).

Plaintiff alleges that both Anyta and Douglas were unjustly enriched by the same course of conduct. This Court has previously recognized that prejudice exists where a separate lawsuit would not produce a different result and the "[d]enial of Plaintiffs' request for default judgment would render futile Plaintiffs' effort at a civil resolution while rewarding Defendant's avoidance of this

litigation." *Boards of Trustees of Ohio Laborers Benefits v. Karnak Concrete LLC*, 2024 WL 3343070, *4 (S.D. Ohio July 9, 2024). That reasoning applies with equal, if not greater, force here.

Here, Anyta and Douglas are now married. Without a judgment against Douglas, Plaintiff's ability to collect against material assets or jointly held accounts may be significantly impaired. (ECF No. 22 at 13). Without a judgment against Douglas, Plaintiff may be left without a full remedy.

Taken together, these circumstances establish a clear risk of continued prejudice to Plaintiff, and this factor weighs heavily in favor of entering default judgment against Douglas.

### 2. Merits of the Claims & Sufficiency of the Complaint

Plaintiff brings two claims against Douglas: unjust enrichment and civil conspiracy. Of these, only the unjust enrichment claim has merit and is sufficiently pled to support default judgment.

As previously discussed, Plaintiff's civil conspiracy claim is insufficiently pled and lacks the factual specificity necessary to sustain judgment. It relies primarily on conclusory assertions without concrete allegations indicating malicious combination between Anyta and Douglas. Upon entry of default, "only those well-pleaded allegations relating to liability are taken as true." *In re Family Resorts of America, Inc.*, 972 F.2d 347 (6th Cir. 1992). Accordingly, that claim cannot support a default judgment.

On the other hand, the unjust enrichment claim is both legally viable and supported by well-pleaded factual allegations. As discussed above, under Ohio law, unjust enrichment requires that: (1) Plaintiff conferred a benefit upon Douglas; (2) Douglas had knowledge of this benefit; and (3) it would be unjust for Douglas to retain this benefit without payment. *See F.D.I.C.*, 573 F.3d at 294–95. Plaintiff alleges that it paid for services never rendered, and that funds were

deposited, at least initially, into Douglas's personal account. (ECF No. 1 ¶¶ 25-26, 56-59). Plaintiff further asserts that Douglas was familiar with the staffing arrangement and received funds for work he did not perform. (ECF No. 1 ¶¶ 25-26, 56-59). These uncontested allegations sufficiently establish each element of unjust enrichment.

Accordingly, this factor weighs in favor of default judgment only with respect to the unjust enrichment claim against Douglas.

### 3. *Amount of Money at Stake*

The Court must next consider the amount of money at issue The Sixth Circuit has cautioned that "matters involving large sums of money should not be determined by default judgments if it can be reasonably avoided." *Rooks v. American Brass Co.*, 263 F.2d 166, 169 (6th Cir. 1959). Here, Plaintiff seeks approximately $800,000, including amounts tied to the deficient conspiracy claim. That figure weighs against default judgment generally, especially as it includes the civil conspiracy claim that this Court finds insufficiently pled.

With respect to the unjust enrichment claim, however, Plaintiff seeks $209,799.42, plus interest. While this amount is substantial, it is not so extraordinary as to render default judgment inappropriate. This is especially true in light of the well-pleaded allegations and the uncontroverted evidence suggesting that Douglas received and retained funds for services not performed. The amount sought is directly tied to the benefit conferred and unjustly retained, thereby, "aligning with the principle that default judgment should be 'fully commensurate' with the harm suffered." *C.A.T. Glob. Inc. v. OTT Trans. Services*, 737 F.Supp.3d 620, 628 (E.D.Mich. 2024) (citations omitted).

Thus, this factor weighs in favor of entering default judgment on the unjust enrichment claim.

### 4. *Disputed Material Facts*

The next factor, the possible disputed material facts, also weighs in favor of granting default judgment. When a party fails to respond and the opposing party moves for default judgment, courts have found that "there is no indication of disputed material facts at this juncture." C.*A.T. Glob. Inc. v. OTT Trans. Services*, 737 F.Supp.3d 620, 629 (E.D.Mich. 2024); *see also Karnak Concrete LLC*, 2024 WL 3343070, at *4 ("Regarding the potential existence of contested material facts, Defendant has given nothing for this Court to evaluate since it has largely abstained from involvement in this proceeding.").

Here, Douglas has twice been properly served with the Complaint and has failed to appear, respond, or otherwise defend against the action. (ECF Nos. 10; 14). He has not participated in any aspect of this litigation. Given his complete absence from the proceedings, there is no reason to believe he would contest the material factual allegations—particularly those supporting the unjust enrichment claim.

With no evidence to the contrary, the Court finds no indication of disputed material facts. This factor supports entry of default judgment.

### 5. *Excusable Neglect*

Douglas's complete absence from this litigation also supports a finding that the default was not the result of excusable neglect. Courts generally reject claims of excusable neglect where a defendant fails to engage with the proceedings in any way. *Indep. Ord. of Foresters v. Ellis-Batchelor*, No. 20-10619, 2021 WL 1588994, at *3 (E.D. Mich. Feb. 23, 2021) (citing 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2858 (3d ed. 2018)). Failure to respond when served with a complaint suggests a willful decision rather than excusable neglect. *See, e.g*., *C.A.T. Glob. Inc*., 737 F.Supp.3d at 629 ("The absence of Defendant's response and

engagement suggests a willful decision to ignore the lawsuit."). "As careless or unintentional conduct does not give rise to excusable neglect, this defense is unavailable where Defendant has not offered any excuse for not timely responding to Plaintiffs' Motions." *Boards of Trustees of Ohio Laborers Benefits v. Karnak Concrete LLC*, 2024 WL 3343070, *4 (S.D.Ohio July 9, 2024).

Here, the reason for Douglas's non-participation is entirely unknown. He has failed to file any responsive pleading or otherwise communicate with this Court despite being served. This is especially concerning given his spouse and co-defendant, Anyta, has submitted an affidavit acknowledging Plaintiff's claims and expressly admitting to the underlying misconduct. (ECF No. 8). Douglas, however, has remained wholly silent. There is no indication in the record that his failure to respond was due to excusable neglect. Rather, the absence of any engagement suggests a willful disregard for this litigation. Accordingly, this factor weighs in favor of granting default judgment.

### 6.  Preference for Decisions on the Merits

Finally, this Court must consider "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1472. While this policy is well-established, it does not override the need for parties to adhere to procedural rules or excuse a defendant's total non-participation. *C.A.T. Glob. Inc.*, 737 F.Supp.3d at 629; *see, e.g.*, *Toler v. Glob. College of Nat. Medicine, Inc.*, 2016 WL 67529, *9 (E.D.Mich. Jan. 6, 2016) ("[W]hile public policy favors resolution of cases on the merits, Defendants and their Counsel have consistently ignored opportunities for a merits-based resolution by refusing to respond in this matter . . . 'Effective judicial administration requires that at some point disputes be treated as finally and definitively resolved.'"(quoting 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2693 (3d ed.))); *Cunningham v. Acct. Processing Grp.*, No. 2:21-CV-

00120, 2022 WL 900618, at *4 (S.D. Ohio Mar. 28, 2022) ("Where trial on the merits is not attainable, however, courts recognize that this policy preference must yield to the needs of litigants actually before them.").

Here, Douglas's refusal to participate in this case makes a decision on the merits unattainable. His failure to respond leaves Plaintiff with no recourse but a default judgment. Since all factors weigh in favor of default judgment on the unjust enrichment claim, and since a decision on the merits is neither realistic nor attainable in this case, policy preferences for a judgment on the merits will not preclude default judgment.

Therefore, default judgment is warranted and will be entered against Douglas on the unjust enrichment claim (Count Five).

### 7. Damages

Having found default judgment proper, this Court must next determine the appropriate measure of damages. Federal Rule of Civil Procedure 55(b)(2) permits the Court to conduct an evidentiary hearing to determine damages, but it does not require one. *See Vesligaj v. Peterson*, 331 F. App'x 351, 354–55 (6th Cir. 2009). Indeed, "[a]n evidentiary hearing is not a prerequisite to the entry of default judgment if damages are contained in documentary evidence or detailed affidavits and can be ascertained on the record before the court." *McNeal v. Serene Home Health Services*, 2024 WL 4850299, *5 (S.D. Ohio Nov. 21, 2024) (quoting *Joe Hand Promotions, Inc. v. RPM Mgt. Co. LLC*, 2011 WL 5389425, *1 (S.D. Ohio Nov. 7, 2011)).

Here, no hearing is necessary. The materials submitted in support of Plaintiff's motion, including a detailed affidavit and supporting documentation, provide a clear accounting of the fraudulent payments made to or for the benefit of Douglas. (ECF No. 22-1). The records identify specific pay periods, recipients, and amounts, and establish that Plaintiff conferred a benefit

19

totaling $209,799.42. This figure corresponds precisely to the amount Plaintiff seeks on the unjust enrichment claim.

While Plaintiff requests the full amount of the benefit conferred, $209,799.42, from both Anyta and Douglas, the supporting documents distinguish the amounts: $86,495.38 corresponds to payments for services attributed to Douglas, and $123,304.04 corresponds to payments for services attributed to Anyta's daughter. (ECF No. 22-1). Given the lack of allegations implicating Douglas in the unjust enrichment related to the payments for Anyta's daughter's falsified hours, this Court finds Douglas liable only for the $86,495.38 allocated to him on the hours and pay sheet. (ECF No. 22-1, Ex. B).

Accordingly, Plaintiff has satisfactorily established damages in the amount of $86,495.38, and this Court will enter judgment in that amount against Douglas.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Judgment on the Pleadings and Default Judgment (ECF No. 22) is **GRANTED in part and DENIED in part**.

Judgment is entered against Defendant Anyta McVeigh Cox with respect to the claims of civil theft (Count Three), the faithless servant doctrine (Count Four), and unjust enrichment (Count Five). Default judgment is entered against Defendant Douglas Cox with respect to Count Five.

Accordingly, Plaintiff is awarded the following relief:

- Count Three – civil theft against Defendant Anyta: $629,398.26, plus interest[1]

---

[1] As to interest on each amount awarded in this Judgment, "[i]n diversity cases in this Circuit, federal law controls post-judgment interest but state law governs awards of prejudgment interest." *Est. of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005) (quoting *F.D.I.C. v. First Heights Bank, FSB,* 229 F.3d 528, 542 (6th Cir.2000)).

Accordingly, post-judgment interest is proper under 28 U.S.C. § 1961 and is based on the rate of the 52-week Treasury Bill. 28 U.S.C. § 1961. Per the most recent available information, this rate is 3.61%. Any pre-judgment interest, if sought, shall be requested by a separate motion.

- Count Four – violation of the faithless servant doctrine against Defendant Anyta: in an amount to be determined following Plaintiff's submission of a supplemental filing, **within fourteen (14) days of this Opinion and Order**, which shall either:

  o (1) reconcile the discrepancy between its asserted "faithless period" beginning July 1, 2022, and the evidentiary record reflecting misconduct no earlier than July 17, 2022; or

  o (2) revise the damages calculation based on a faithless period commencing no earlier than July 17, 2022.

- On Count Five – unjust enrichment against:

  o Defendants Anyta and Douglas: $86,495.38, plus interest

  o Defendant Anyta: $123,304.04, plus interest

Plaintiff's motion is denied as to the claims for fraud (Count One), conversion (Count Two), and civil conspiracy (Count Six).

Since the fraud and conversion claims (Counts One and Two) were pled in the alternative to the civil theft claim (Count Three), and in light of the judgment now entered in Plaintiff's favor on Count Three, Counts One and Two are hereby **DISMISSED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 26, 2025**